**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**JOHNSON & JOHNSON CONSUMER**
**COMPANIES, INC.,**

                         **Plaintiff,**

             **-against-**

**HARRY AINI, et al.,**

                       **Defendants.**
-------------------------------------------------------------------x

**REPORT AND**
**RECOMMENDATION**

**02-CV-6624 (DLI)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

In a lengthy opinion issued on March 25, 2008, the Honorable Dora L. Irizarry, the

District Judge assigned to this case, granted in part and denied in part a motion for summary

judgment filed by plaintiff, Johnson & Johnson Consumer Companies, Inc. ("plaintiff" or

"JJCC"), against various corporate and individual defendants named in this trademark

infringement action.  See Opinion and Order (March 25, 2008) ("3/25/08 Opinion"), ECF

Docket Entry ("D.E.") #185.[1]  Rather than readying the remaining claims for trial, plaintiff

thereafter filed successive motions to reopen discovery, and has renewed its motion for

summary judgment and moved for sanctions.  On August 27, 2009, Judge Irizarry referred

plaintiff's motion to the undersigned magistrate judge for a report and recommendation.  See

Order Referring Motion (Aug. 27, 2009).  For the reasons that follow, this Court recommends

that plaintiff's second motion for summary judgment be denied and that the issue of sanctions

be deferred until after trial.

---

[1]  That opinion also denied defendants' cross-motion for summary judgment.  See 3/25/08
Opinion at 33-35.

# BACKGROUND

Plaintiff JJCC owns the rights to a line of skin care products sold under "AMBI" trademarks, which are registered with the United States Patent and Trademark Office. See Pl.'s First 56.1 ¶¶ 5, 29, D.E. #171-69. This case arises out of a dispute over two of those products: AMBI Special Skin Discoloration Fade Cream in green packaging and AMBI Extra Skin Discoloration Fade Cream in red packaging. The Complaint accuses defendants of selling, marketing, and/or distributing counterfeit versions of these AMBI products, in violation of Sections 32 and 43(a) of the Trademark Counterfeiting Act of 1984 (15 U.S.C. §§ 1114, 1125, respectively) (the "Lanham Act" or the "Act"), New York's General Business Law ("GBL") section 360-1,[2] and New York common-law principles of unfair competition and unjust enrichment. See generally Compl., D.E. #1.

The Complaint names, among other defendants, four individuals, all members of the Aini family[3] alleged to be involved in the sale, distribution and/or marketing of counterfeit AMBI products: brothers Harry Aini (hereinafter "H. Aini"), Jacob (or Jack) Aini ("J. Aini"), and Michael Aini ("M. Aini"); and J. Aini's wife, Rachel Aini ("R. Aini"). The corporate defendants named in the Complaint include three entities (New York distributors, importers and/or retailers) alleged to be owned and operated by certain of the Aini Defendants

---

[2] Although plaintiff brought its GBL claim under section 368-d, this provision was, as Judge Irizarry noted, repealed in 1997 and re-codified under section 360-1. See 3/25/08 Opinion at 2 n.1 (citing N.Y. Gen. Bus. Law § 360-1 (McKinney 1999); Winner Int'l LLC v. Omori Enters., Inc., 60 F.Supp.2d 62, 73 (E.D.N.Y. 1999)).

[3] Judge Irizarry referred to the individual defendants as the "Aini Defendants." See 3/25/08 Opinion at 3 & n.6.

and involved in the infringing conduct: i.e., I.B.E. Cosmetics, Inc. ("IBE"),[4] I.C.E. Marketing, Corp. ("ICE"),[5] and Homeboys International, Inc. ("Homeboys").[6] Also named as a defendant is a New York real estate corporation owned and operated by M. Aini: Choul Realty, Inc. ("Choul"), which owns office/warehouse space in Maspeth, Queens, occupied by IBE and ICE. See 3/25/08 Opinion at 3-4.

In her Opinion of March 25, 2008, Judge Irizarry reviewed the evidence against each defendant, and, among other things, granted plaintiff's motion for summary judgment against IBE, H. Aini, and Homeboys; denied plaintiff's motion as against ICE, M. Aini, J. Aini, and Choul; rejected plaintiff's argument that this is an "exceptional case," warranting attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a);[7] and denied defendants' cross-motion for

---

[4] IBE also did business as IBE Corp., International Beauty Exchange, and International Beauty Exchange, Inc. As used in this opinion, "IBE" also refers to a predecessor corporation, K.A.K. Group, Inc., d/b/a International Beauty Exchange.

[5] ICE is also known as I.C.E. International Cosmetics Exchange Marketing.

[6] "Homeboys" also refers to that entity's predecessor, Homeboys Discount, Inc.

Although the exact relationship that each of the Aini Defendants bears to the aforesaid entities is in dispute, the following appears to be uncontroverted: H. Aini is the president and sole shareholder of IBE, and, according to tax records, a fifty percent owner of ICE. See Pl.'s First 56.1 ¶ 13; Pl.'s Second 56.1 ¶ 5, D.E. #252. H. Aini's brother, M. Aini, is the president and at least fifty percent shareholder of ICE. See Pl.'s First 56.1 ¶ 15; Pl.'s Second 56.1 ¶ 6. A second brother, J. Aini, is employed by or works for IBE, is an officer, employee, or consultant for ICE, owned Homeboys until 1995, and may still "operate" Homeboys. See Pl.'s First 56.1 ¶ 19; Pl.'s Second 56.1 ¶¶ 16-26. R. Aini (J. Aini's wife) is/was allegedly a buyer/manager for ICE and Homeboys. See Pl.'s First 56.1 ¶ 10; Pl.'s Second 56.1 ¶¶ 27-28.

[7] Plaintiff did not move for summary judgment against R. Aini, nor does its renewed motion seek such relief.

summary judgment.[8]  See id. at 36.  Judge Irizarry held that the products at issue were indeed

counterfeit within the meaning of the Lanham Act, that plaintiff's trademarks are enforceable,

and that the conduct complained of satisfied the elements for liability under the Act.  See id. at

18-25.  She also held that "there is no question that IBE [and] Homeboys . . . used Plaintiff's

marks in commerce," see id. at 25-26, and that H. Aini, "as the president and sole shareholder

of IBE, and the only individual with check writing authority on behalf of IBE, is undoubtedly

the 'moving, active conscious force' behind IBE's infringement."  Id. at 27 (citations

omitted).  Judge Irizarry therefore granted summary judgment against IBE, Homeboys and H.

Aini.  Id. at 36.  She concluded, however, that there were triable issues of fact with regard to

"whether ICE, M. Aini, and Choul were involved in the use of Plaintiff's mark in commerce,"

and whether J. Aini was a "'moving, active conscious force' behind any infringement . . . ."

See id. at 26-28.

Following Judge Irizarry's ruling, plaintiff moved (over defendants' objection) to

reopen discovery in order to obtain further information regarding the "financial connections"

between defendants.  See First Motion to Reopen Discovery (May 7, 2008), D.E. #187;

[Defendants'] Memorandum in Opposition (May 21, 2008), D.E. #197.  During a telephone

conference, this Court granted plaintiff's request in part.  See Minute Entry (June 2, 2008),

D.E. #202.  Eventually, after further motion practice, plaintiff secured the following additional

---

[8]  She also granted summary judgment against five local retail stores that sold counterfeit
AMBI products.  See 3/25/08 Opinion at 28, 36.  As for the remaining defendant -- New King
Cosmetics, Inc., a New York distributor not affiliated with the Aini Defendants -- plaintiff
filed a separate motion for summary judgment against New King, see Plaintiff's Notice of
Motion for Summary Judgment Against Defendant New King, D.E. #164, but it appears that
that motion has not been resolved.  Compare 3/25/08 Opinion at 25, with id. at 26, 36.

discovery from defendants or other sources: IBE's federal tax returns for 1997-2001; H. Aini's federal tax returns for 1997-2002; ICE's federal tax returns for 1997-2002; M. Aini's federal tax returns for 1997-2000; J. and R. Aini's joint federal tax returns for 1997-2002; J. and M. Aini's "trial deposition transcripts" from a proceeding before the Trademark Trial and Appeals Board, to wit, <u>Pramil S.R.L. v. Mitchell Cosmetics SARL</u>, Opposition Number 911223171; a deposition transcript of J. Aini dated December 8, 2003, in a proceeding before the United States Patent and Trademark Office, entitled <u>I.B.E., Inc. v. Balekjian</u>, TTAB Cancellation No. 92,041,076; and documentation regarding an insurance policy issued to ICE by Citizens Insurance Company of America ("Citizen's"). <u>See</u> Response to Discovery Request (June 30, 2008), D.E. #205; Affirmation of Rodney Brown (Dec. 29, 2008) ("Brown Aff.") ¶¶ 5-20 & Exs. thereto, D.E. #254.

On July 9, 2008, plaintiff requested a pre-motion conference and permission to renew its motion for summary judgment, based on newly discovered evidence that "defendants Michael Aini, Jacob Aini and/or Choul were involved in the use of Plaintiff's marks in commerce." <u>See</u> Letter Requesting Pre-Motion Conference (July 9, 2008) ("7/9/08 Pl. Letter"), D.E. #206. Plaintiff did not seek permission to move for sanctions, or to revisit Judge Irizarry's ruling that this was not an exceptional case warranting an award of attorneys' fees under 15 U.S.C. § 1117(a). <u>See id</u>. In lieu of scheduling a pre-motion conference, Judge Irizarry directed the parties to submit a proposed briefing schedule for the summary judgment motion. <u>See</u> Order (July 29, 2008).

Meanwhile, plaintiff moved again to re-open discovery, <u>see</u> Letter Motion for

Discovery (Aug. 22, 2008), D.E. #219, and to unseal documents in a lawsuit brought by another plaintiff represented by the same law firm. See Letter Motion to Unseal Document (Aug. 14, 2008), D.E. #214. This Court denied the requests. See Minute Entry (Sept. 19, 2008), D.E. #233.

On December 18, 2008, plaintiff filed its second motion for summary judgment against ICE, M. Aini, J. Aini, and Choul. See Plaintiff's Memorandum of Law In Support of Motion for Summary Judgment and Sanctions (Dec. 18, 2008) ("Pl. Mem."), D.E. #253. Without authorization, plaintiff also moved for modification of Judge Irizarry's denial of attorneys' fees and for the imposition of sanctions. See id. at 22-25.

While the second motion for summary judgment was *sub judice*, and before it was referred to the undersigned magistrate judge, plaintiff informed Judge Irizarry of its intent to supplement the motion based on newly discovered facts as to whether "Jacob Aini 'controlled' Defendant ICE." See Letter to the Court (Jan. 29, 2009) at 1, D.E. #260. According to plaintiff, this new evidence would put the lie to allegations in defendants' papers opposing summary judgment. See id. Judge Irizarry ruled that "this alleged motion to supplement the motion for summary judgment is no more than a surreply and surreplies are not permitted," and that "[a]ny motion filed without the permission of the court at this juncture will be summarily stricken." See Order (Jan. 29, 2009). She did remind defense counsel that any misrepresentations made by him to the Court could result in Rule 11 sanctions as well as a referral to the appropriate grievance committees. See id.

Contrary to Judge Irizarry's order, plaintiff thereafter filed  a formal motion to

6

supplement its renewed motion for summary judgment, <u>see</u> Plaintiff's Memorandum of Law In Support of Motion for Permission to File Sur-Reply (Feb. 17, 2009), D.E. #262, as opposed to a request for a pre-motion conference; Judge Irizarry summarily struck the motion from the record as violating her previous order. <u>See</u> Order (Feb. 18, 2009). Plaintiff then requested a pre-motion conference in connection with its motion to file a surreply, <u>see</u> Letter Requesting Pre-Motion Conference (Feb. 18, 2009), D.E. #265, and, at the resulting conference, Judge Irizarry granted plaintiff permission to file a surreply. <u>See</u> Minute Entry (Mar. 27, 2009). Plaintiff then filed a sur-reply regarding J. Aini's control of ICE, to which defendants responded. <u>See</u> Plaintiff's Sur-Reply Memorandum of Law (April 20, 2009) D.E. #269; Defendants' Brief in Opposition to Plaintiff's Sur-Reply (April 20, 2009), D.E. #272.

On August 28, 2009, one day after Judge Irizarry referred the renewed motion for summary judgment to the undersigned magistrate judge, <u>see</u> Order (Aug. 27, 2009), plaintiff again moved to submit additional evidence in support of its previously supplemented second motion for summary judgment: specifically, documents and deposition testimony by J. Aini in 2006, in a proceeding pending before the Trademark Trial and Appeal Board, entitled <u>I.B.E. v. GIP.C1., Inc.</u>, Petition for Cancellation No. 92045813. <u>See</u> Letter Motion for Pre-Motion Conference (Aug. 28, 2009), D.E. #274. After hearing oral argument from the parties, this Court granted plaintiff's application to further supplement the record, but granted J. Aini permission to file a sworn statement explaining those records. <u>See</u> Minute Entry (Oct. 14, 2009) D.E. #279; <u>see also</u> Decl. of Jacob Aini (Oct. 23, 2009), D.E. #284.

## **DISCUSSION**

Plaintiff renews its motion for summary judgment against ICE, M. Aini, J. Aini and Choul, on the ground that newly discovered evidence demonstrates that the Aini Defendants "misled the Court." Pl. Mem. at 3. Additionally, and for the same reason, plaintiff reargues its motion for attorney's fees under the Lanham Act, and moves for sanctions under Rules 37 and 56 of the Federal Rules of Civil Procedure. See Pl. Mem. at 22-25.

Contrary to the premise underlying plaintiff's latest motion for summary judgment, the fact that individual defendants have provided inconsistent testimony does not entitle plaintiff to judgment as a matter of law with respect to the remaining claims. And plaintiff's motions for attorneys' fees and for sanctions were filed without the Court's permission and for that reason should be denied.

## **I. Standard of Review on Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may not be granted unless the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party." Sista v. CDC Ixis N.A., Inc., 445 F.3d 161, 169 (2d

Cir. 2006) (citations omitted).

"A party may renew its motion for summary judgment as long as it is supported by new material." Wechsler v. Hunt Health Sys., Ltd., 198 F.Supp.2d 508, 514 (S.D.N.Y. 2002) (citations omitted). Nonetheless, "the Court retains discretion to determine the scope of its reconsideration." See id.; Rite Aid Corp. v. Am. Home Prod. Corp., Nos. 02-CV-4432 (ILG), 2003 WL 21250547, at *4-5 (E.D.N.Y. April 16, 2003). If the new material presented was previously discoverable, a "[c]ourt will not reward [a party] for filing a premature summary judgment motion with another bite at the apple." U.S. Underwriters Ins. Co. v. Falcon Constr. Corp., No. 02 CIV 4182 (LTS)(GWG), 2006 WL 1292206, at *1 (S.D.N.Y. May 10, 2006).

## II. Plaintiff's "New Evidence"

The "new" material proffered by plaintiff consists primarily of transcripts of testimony by the Aini Defendants in other proceedings, as well as tax returns and other documents concerning their relationships to the corporate defendants. Plaintiff contends that this proof is inconsistent with the positions taken by defendants in this litigation and urges the Court to draw negative inferences from these apparent inconsistencies; according to plaintiff, "if the Court, as the trier of fact, is convinced that J. Aini, M. Aini, H. Aini and R. Aini gave 'evasive or false testimony to avoid revealing the truth', an inference that the answers would have been contrary to the witnesses['] interests (i.e., established their involvement in the trafficking in counterfeit Ambi product) is permitted." Pl. Mem. at 18 (quoting Experience Hendrix, LLC v. Chalpin, PPX, 461 F.Supp.2d 165, 171-72 (S.D.N.Y. 2006)). Plaintiff's

argument, though legally correct, assumes too much.

As plaintiff notes, the inference "that the answers would have been contrary to the witnesses['] interests" is *permissive,* not mandatory. See Experience Hendrix, 461 F.Supp.2d at 171-72. Thus, a *trier of fact* would be *permitted* -- not required -- to draw an adverse inference based on false testimony. See id. (where defendant testified falsely at a preliminary injunction hearing, the court, as fact-finder, was permitted to draw a negative inference). Critically, the Court is not a trier of fact on a motion for summary judgment, which may not be granted unless "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c).

One possible inference to be drawn from the Aini Defendants' various inconsistent and conflicting sworn statements is that IBE and ICE operated as a single entity, and that M. Aini and J. Aini were "active, moving conscious force[s]" in the trafficking of counterfeit Ambi product. 3/25/08 Opinion at 27. This inference is not, however, the only possible one. Alternatively, a trier of fact could infer from this evidence that the individual defendants simply sought to distance themselves from the infringing conduct.

In the criminal context, the Second Circuit has consistently held that ordinarily, "falsehoods told by a defendant in the hope of extricating himself from suspicious circumstances are insufficient proof" of guilt, since false exculpatory statements are consistent with both innocence and guilt. See United States v. Ogando, 547 F.3d 102, 109 (2d Cir. 2008) (quoting United States v. Johnson, 513 F.2d 819, 824 (2d Cir. 1975)); accord United

States v. Glenn, 312 F.3d 58, 69 (2d Cir. 2002); see also United States v. Scheibel, 870 F.2d 818, 822 (2d Cir. 1989).  Similarly, in the civil context, "discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion."  Bose Corp. v. Consumers Union of U. S., Inc., 466 U.S. 485, 512 (1984); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986); Goldhirsch Group, Inc. v. Alpert, 107 F.3d 105, 109 (2d Cir. 1997).

Here, as in Ogando, any false and misleading statements are consistent with attempts by defendants to extricate themselves from suspicious circumstances.  Accordingly, the inferences to be drawn from their alleged falsehoods must be reserved for the trier of fact.

## III.  Summary Judgment Against ICE and M. Aini

In ruling on plaintiff's first motion for summary judgment, Judge Irizarry held that IBE had infringed on plaintiff's trademark, see 3/25/08 Opinion at 26-27, 36, but she declined to hold ICE liable for IBE's infringement.  After reviewing the proof proffered by plaintiff, the District Judge concluded:  "It is conceivable to the court that two businesses may share certain expenses and even office and warehouse space and yet remain separate.  Thus Plaintiff's evidence is insufficient to satisfy its burden, as a matter of law . . . ."  See id. at 26-27. Plaintiff essentially ignores the Court's observation and now renews its argument that IBE and ICE are the same company, see Pl. Mem. at 5-7, and that therefore ICE, and M. Aini as ICE's "president, allegedly sole employee and 50% owner," id. at 20, should be held liable for IBE's trademark infringement.[9]  See id. at 18-20.  For the reasons that follow, plaintiff has again

---

[9]  Plaintiff emphasizes M. Aini's "willing[ness] to testify falsely" about H. Aini's relationship
(continued...)

failed to satisfy its burden to establish, as a matter of law, that ICE and IBE are the same company.

## A. Governing Legal Principles

As a preliminary matter, "[u]nder the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil." Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996); accord Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd., 622 F.Supp.2d 46, 53 (S.D.N.Y. 2009); Dolco Invs., Ltd. v. Moonriver Dev., Ltd., 486 F.Supp.2d 261, 271 (S.D.N.Y. 2007). Since IBE and ICE are incorporated as separate entities, see Pl.'s First 56.1, ¶¶ 12, 14, it is plaintiff's obligation to overcome this presumption of limited liability.

Plaintiff contends that the appropriate standard for determining whether IBE and ICE are the same entity, and thus subject to joint liability, is the "single-employer doctrine" articulated in the district court's decision in Murray v. Miner, 876 F.Supp. 512, 514 (S.D.N.Y. 1995), aff'd, 74 F.3d 402 (2d Cir. 1996).[10] See Pl. Mem. at 19. As plaintiff acknowledges, however, Murray and the single-employer doctrine address employer liability to employees, and plaintiff cites no relevant case law extending that test to trademark infringement cases, or even beyond the context of employer liability. See id. To be sure, the

---

[9](…continued)
to ICE, see Pl. Mem. at 20, but otherwise points to no new evidence to support its argument.

[10] The factors relevant for determining if one company is liable for the conduct of another under the single-employer doctrine are: (1) interrelated operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. See Murray, 876 F.Supp. at 514.

Second Circuit's opinion affirming Murray acknowledges that "recently, the single employer doctrine has been extended to the civil rights context" -- specifically, to employment discrimination actions; that decision nevertheless makes clear that the doctrine is limited to the context of "imposing liability for *labor infractions* where two nominally independent entities do not act under an arm's length relationship." See Murray, 74 F.3d at 404-05 (emphasis added); see id. at 405 (emphasizing that "the policy giving rise to the single employer doctrine is not implicated at all in the absence of an employer-employee relationship between the plaintiff and the affiliate of the defendant . . . ." ). In other words, "[i]n the absence of an employer-employee relationship, the single employer doctrine does not apply." Id.

This case does not concern labor infractions and thus the single-employer test may not be "substitut[ed] . . . for the veil-piercing doctrine." Id. Plaintiff provides no legal or policy justification whatsoever for extending the single-employer test to Lanham Act cases, which, in this Circuit, have often applied the veil-piercing standard in assessing the liability of a parent corporation or individual shareholder for the conduct of a dominated corporate entity.[11] Similarly, courts in this Circuit have employed that test where, as here, a Lanham Act plaintiff alleged that multiple defendants were in fact the same infringing company. See Register.com v. Domain Registry of America, Inc., No. 02 Civ. 6915 (NRB), 2002 WL 31894625, at *7

-------

[11] See, e.g. Bravado Int'l Group Merch. Servs., Inc. v. Ninna, Inc., No. CV-08-3123 (CPS), ___ F.Supp.2d ___, 2009 WL 2707350, at *1, 11-16 (E.D.N.Y. Aug. 27, 2009) (ruling that plaintiffs failed to properly plead veil-piercing claim to hold individual defendants liable for a judgment against entities for selling counterfeit merchandise); Harrison-Hoge Indus., Inc. v. Panther Martin S.R.L., No. 05-CV-2851 (JFB)(ETB), 2008 WL 905892, at *39-40 (E.D.N.Y. Mar. 31, 2008) (granting summary judgment in favor of defendant entity charged, under veil-piercing theory, with subsidiary's trademark infringement).

(S.D.N.Y. Dec. 27, 2002) ("Piercing the corporate veil requires more than a prima facie showing that the defendants share some officers, resources, and staff . . . ."); see also 1 W. Fletcher, Cyclopedia of Corporations § 41.10, at 615 (1990) (explaining that the corporate veil may be pierced "where a corporate entity is operated by a partnership and there is such an intermingling of the affairs of the two businesses that they are mere instrumentalities of each other . . ."). Accordingly, the test for piercing the corporate veil is the appropriate legal standard for determining whether IBE and ICE were the same corporation.

"The Second Circuit has noted that the question of piercing the corporate veil is a fact-intensive issue that generally must be submitted to the jury." Carte Blanche PTE., Ltd. v. Diners Club Int'l, Inc., 758 F.Supp. 908, 914 (S.D.N.Y. 1991) (citing American Protein Corp. v. AB Volvo, 844 F.2d 56, 59 (2d Cir. 1988)); see Fulgini Orilio & F.LLI S.p.A v. Lettieri, No. 05 Civ. 3718 (SMG), 2007 WL 1834750, at *3 (E.D.N.Y June 26, 2007); United States v. Hued, No. 87 Civ. 7740 (PNL), 1992 WL 346877, at *3 (S.D.N.Y. Nov. 10, 1992) (Leval, J.). Nevertheless, "while there may be a presumption against granting summary judgment in this context, courts will not shy away from their responsibility to undertake a careful summary judgment analysis when confronted with the issue of alter ego liability." Matter of Tax Indebtedness of Coppola, No. 91-CV-0919 (JBW), 1994 WL 159525, at *3 (E.D.N.Y. Jan. 10, 1994) (citations omitted) (collecting cases).

"Under New York choice-of-law principles, the law of the state of incorporation determines" whether to pierce the corporate veil. See Fletcher v. Atex, Inc., 68 F.3d 1451,

1456 (2d Cir. 1995) (citations and quotations omitted).  Since both IBE and ICE are

corporations organized under the laws of the State of New York, <u>see</u> Pl.'s First 56.1, ¶¶ 12,

14, New York State law governs.  New York law requires a two-part showing to warrant

piercing the corporate veil: "(i) that the owner exercised complete domination over the

corporation with respect to the transaction at issue; and (ii) that such domination was used to

commit a fraud or wrong that injured the party seeking to pierce the veil." <u>Am. Fuel Corp. v.

Utah Energy Dev. Co.</u>, 122 F.3d 130,134 (2d Cir.  1997); <u>accord</u> <u>Bravado Int'l Group Merch.

Servs., Inc. v. Ninna, Inc.</u>, __ F.Supp.2d ___, 2009 WL 2707350, at *12 (E.D.N.Y.  Aug.

27, 2009); <u>Harrison-Hoge Indus., Inc. v. Panther Martin S.R.L.</u>, No. 05-CV-2851 (JFB)

(EJB), 2008 WL 905892, at *39 (E.D.N.Y. Mar. 31, 2008) (citations omitted).

> The factors bearing on the "complete domination" prong include the following:
>
> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of
> funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office
> space, address and telephone numbers of corporate entities; (6) the degree of discretion
> shown by the allegedly dominated corporation; (7) whether the dealings between the
> entities are at arms length; (8) whether the corporations are treated as independent profit
> centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and
> (10) intermingling of property between the entities.

<u>See</u> <u>MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC</u>, 268 F.3d 58, 63 (2d Cir.

2001) (quoting <u>Freeman v. Complex Computing Co.</u>, 119 F.3d 1044, 1053 (2d Cir. 1997)).

With respect to the second prong -- i.e., whether "such domination was used to commit

a fraud or wrong that injured the party seeking to pierce the veil" -- courts require a nexus

between the failure to maintain separate corporate formalities and the wrong suffered by the

plaintiff.  <u>See</u> <u>Freeman</u>, 119 F.3d at 1053 (explaining that "[u]nless the control is utilized to

perpetrate a fraud or other wrong, limited liability will prevail . . . ."); Harrison-Hoge Indus.,
2008 WL 905892, at *40 (explaining that the party seeking to pierce the corporate veil "must
establish that the parent corporation misused the corporate form . . . to commit a fraud or
avoid an obligation.") (citation omitted); Rays Trading (H.K.) Co. Ltd. v. Judy-Philippine,
Inc., No. 98 Civ. 0170 (JGK), 1998 WL 355422, at *4 (S.D.N.Y. July 2, 1998) (denying
efforts to pierce the corporate veil, despite allegations of fraud, because there was "no
indication that the corporate form itself was used as the means to commit the wrongs allegedly
performed.").

### B. Application of the Law to the Facts

In support of its claim that IBE and ICE are the same company, plaintiff proffers the
following facts: the two companies share the same warehouse, with IBE covering ICE's
warehouse expenses; the two companies share common management and ownership, with H.
Aini owning one hundred percent of IBE and fifty percent of ICE, H. Aini working for ICE,
and M. Aini playing some role in both businesses; and the two companies employ the same
people to work in the warehouse. See Pl. Mem. at 5-7, 19.[12] Evening assuming the truth of

---

[12]  Defendants, who describe the relationship between the two entities as that of "a vendor-
supplier and a landlord-tenant," see Defendants' Memorandum of Law In Opposition To
Plaintiff's *Second* Motion for Summary Judgment ("Def. Mem.") at 11, D.E. #257, point to
evidence suggesting that IBE and ICE maintained separate corporate forms:

>  IBE and ICE had 1) separate offices; 2) separate warehouse sections; 3) separate
>  computers; 4) separate computer systems; 5) separate telephone numbers; 6)
>  separate bank accounts; 7) separate and different accountants; 8) separate
>  employer tax identification numbers; 9) separate filing receipts from the N.Y.S.;
>  and 10) they filed separate tax returns.

See id. at 10-11.

the facts identified by plaintiff, this showing falls far short of satisfying the first prong for piercing the corporate veil (i.e., disregard of corporate formalities), and indeed fails to address at least half of the relevant factors (i.e., items (3), (6), and (9)). See MAG Portfolio, 268 F.3d at 63.

Moreover, mere ownership of a controlling share in the allegedly dominated company is "never" enough to establish liability under a veil-piercing theory. Billy v. Consol. Mach. Tool Corp., 51 N.Y.2d 152, 163 (1980); see United States v. Bestfoods, 524 U.S. 51, 61 (1998)) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (citation and quotation marks omitted); In re Amaranth Natural Gas Commodities Litig., 587 F.Supp.2d 513, 538 (S.D.N.Y. 2008) ("While plaintiffs have alleged common ownership and overlapping directors [of entities operating out of the same address], these factors alone are insufficient to support an extension of liability."); Pacho v. Enter. Rent-A-Car Co., 572 F.Supp.2d 341, 351 (S.D.N.Y. 2008). Nor is one corporation's involvement in the decision-making process of another. See Truglia v. KFC Corp., 692 F.Supp. 271, 275 (S.D.N.Y. 1988); Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1149 (9th Cir. 2004) (holding that "[t]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law.") (citing Dole Food Co. v. Patrickson, 538 U.S. 468, 475 (2003)). "At the very least, there must be direct intervention [by the allegedly dominating entity] to such an extent that the subsidiary's paraphernalia of incorporation, directors and officers are

completely ignored." Billy, 51 N.Y.2d at 163 (citations and quotations omitted); see

Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 778 (2d Cir. 1995)

(declining to pierce the corporate veil, despite common ownership and actual control, because

plaintiff had not "shown an absence of corporate formalities" or an "intermingling of corporate

finances and directorship"). In short, "[t]he injustice that allows a corporate veil to be pierced

is not a general notion of injustice; rather, it is the injustice that results only when corporate

separateness is illusory." Katzir's Floor, 394 F.3d at 1149.

In this case, the facts presented by plaintiff merely suggest *some* shared ownership and

management, and do not approach the high level of domination required in order to prevail on

a motion for summary judgment on a veil-piercing theory. Furthermore, plaintiff alleges no

facts to establish that the shared control was "with respect to the transaction at issue." See

Harrison-Hoge Indus., 2008 WL 905892, at *39.

Even assuming that plaintiff had made the requisite showing of "complete domination

over the corporation with respect to the transaction at issue," summary judgment would

nonetheless be inappropriate, inasmuch as plaintiff has cited no evidence that such domination

"was used to commit a fraud or wrong that injured the party seeking to pierce the corporate

veil." Id. Although plaintiff has, throughout this litigation, complained of fraud and

misrepresentations regarding IBE and ICE's management and ownership, plaintiff provides no

proof that the joint ownership, or the facade of separate ownership, was used to commit the

trademark infringements at issue. Accordingly, this Court respectfully recommends that the

District Court deny plaintiff's renewed request for summary judgment as against ICE,

predicted on the theory that IBE and ICE are the same company; as against M. Aini, predicated on his role as the president of ICE; and as against Choul, predicated on the fact that it "owns the IBE/ICE warehouse, is owned 100% by M. Aini, who also owns 50% of ICE and is president of ICE." Pl. Mem. at 1 n.1.[13]

## IV.  Summary Judgment Against J. Aini

Plaintiff's renewed motion for summary judgment against J. Aini is similarly flawed. As Judge Irizarry observed in her March 25, 2008 Opinion, "it is well-settled that 'personal liability for trademark infringement and unfair competition is established if the officer is a moving, active conscious force behind [the defendant corporation's] infringement." See 3/25/08 Order at 27 (quoting Bambu Sales, Inc. v. Sultana Crackers, Inc., 683 F.Supp 899, 913 (E.D.N.Y 1988)).  With respect to J. Aini, Judge Irizarry held that, although the "record reflects that J. Aini did act in some capacity on behalf of IBE and that he acted as a buyer for ICE," his "precise role" and "whether he was a 'moving, active conscious force' behind any infringement . . . remains a question of fact appropriate for determination by a jury." See 3/25/08 Opinion at 27-28.

In its renewed motion for summary judgment, plaintiff contends that newly discovered evidence establishes that "J. Aini had a controlling role in the business of IBE, ICE and

---

[13]  Although plaintiff's renewed motion for summary judgment purports to extend to Choul, plaintiff's entire argument as to Choul is relegated to a perfunctory footnote.  See Pl. Mem. at 1 n.1.  Specifically, after making the statement quoted  above, plaintiff concludes that, since "M. Aini was a moving active and conscious force behind IBE/ICE's sale of counterfeit Ambi product," "Choul must have knowingly leased the warehouse for ICE's illegal activity."  Id. Of course, to the extent that there are factual issues as to whether M. Aini was the "moving force," plaintiff's motion for summary judgment against Choul must likewise fail.

Homeboys, and as such, had an active, moving and conscious [role] in the trafficking of counterfeit Ambi product." See Pl. Mem. at 21. Because the issue of ICE's liability should be left for the trier of fact to resolve, see *supra* pages 16-19, plaintiff's entitlement to summary judgment against J. Aini turns on his role in the trademark infringements committed by either IBE or Homeboys, against whom Judge Irizarry granted summary judgment in her March 25, 2008 Opinion. See 3/25/08 Opinion at 36. This Court addresses each ground for liability in turn.

### A. J. Aini's Role in the Business of IBE

With respect to IBE, the "newly discovered" evidence proffered by plaintiff indicates that J. Aini worked for IBE as a consultant and, at some point in time, served as secretary of its board. See Pl. Mem. at 10. Although this evidence suggests that in defending this lawsuit, J. Aini may have misrepresented his role at IBE, that proof does not establish that J. Aini was "a moving, active conscious force behind" IBE's trademark infringement. See *supra* pages 9-11; see also Cartier v. Aaron Faber, Inc., 512 F.Supp.2d 165, 170 (S.D.N.Y. 2007) (denying summary judgment against fifty-percent owner of infringing corporation where plaintiffs failed to show that owner "was an active force behind [corporation's] infringing acts, or even that he authorized and approved those acts . . . ."); Bambu Sales, 683 F.Supp at 913; Sara Lee Corp. v. Am. Leather Prods., Inc., No. 97 CV 4158 (JP), 1998 WL 433764, at *19 (N.D. Ill. July 29, 1998) (holding that individual defendant was not personally liable for company's trademark infringement even though he was "the owner, president, and sole financier," where plaintiff failed to offer evidence that he oversaw, approved, or participated in the infringing activity).

As plaintiff's submissions present no evidence that J. Aini authorized, approved, or participated in IBE's sale of counterfeit Ambi products, plaintiff is not entitled to summary judgment against him predicated on his role at IBE.

### B. J. Aini's Role in the Business of Homeboys

With respect to Homeboys, plaintiff's "new" evidence consists of the deposition testimony of J. Aini in another proceeding, I.B.E., Inc. v. Balekjian, TTAB Cancelleation No. 92,041,076, in which J. Aini testified that he operated and/or owned Homeboys. See Pl. Mem. at 11-12; J. Aini 12/8/03 Dep. Tr., Ex. N to Brown Aff., at 58.12-15.[14] As plaintiff repeatedly emphasizes, J. Aini's testimony about his role in Homeboys has been inconsistent – he testified that he sold Homeboys in 1995 to his brothers, but, in 2003, he testified that he had a retail store, and that he "operated" Homeboys. See Pl. Mem. at 11-12.

In granting summary judgment against H. Aini, Judge Irizarry articulated that, when a defendant is the sole individual with authority to make decisions on behalf of a corporation, that individual is undoubtedly the "moving, active conscious force" behind any trademark violations. See 3/25/08 Opinion at 27 (citing Calvin Klein Jeanswear Co. v. Tunnel Trading, No. 98 Civ. 5408, 2001 WL 1456577, at *6 (S.D.N.Y Nov. 16, 2001)). However, where, as here, there is conflicting testimony regarding a defendant's precise role, and that defendant is not the sole individual with decision-making authority, the issue of his involvement in infringing activities must be submitted to a jury. See Grupke v. Linda Lori Sportswear, Inc.,

---

[14] As this evidence appears to have been previously discoverable, the Court could, on that basis, deny the renewed motion. See U.S. Underwriters Ins., 2006 WL 1292206, at *1.

921 F.Supp. 987, 999 (E.D.N.Y. 1996) (declining to grant summary judgment holding individual defendant liable for corporation's trademark infringement where there were inconsistencies and thus factual disputes regarding her position and responsibilities at the infringing corporation). Accordingly, plaintiff's renewed motion for summary judgment against J. Aini should be denied.

## IV. Exceptional Case Within the Meaning of 15 U.S.C. § 1117(a)

As part of its renewed motion for summary judgment, plaintiff asks the District Court to revisit the issue of whether this is an "exceptional case" within the meaning of the Lanham Act, which permits a prevailing party to recover attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). Judge Irizarry rejected plaintiff's prior application under this section, ruling that "[a]lthough . . . the defendants acted at least with a willful blindness toward the possibility that they were infringing on Plaintiff's mark, this case is not an exceptional case that mandates the court to award attorneys' fees." See 3/25/08 Opinion at 32-33. Dissatisfied with that conclusion, plaintiff cites defendants' "vast swath of lies during this litigation" as the hook upon which this new motion rests. See Pl. Mem. at 23. However, despite Judge Irizarry's prohibition against filing motions without leave of the court, plaintiff never sought or obtained permission to reargue the issue of "exceptional case."

"Although a party may renew its motion for summary judgment as long as it is supported by new material, the Court retains discretion to determine the scope of its reconsideration." Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp., 101 F.Supp.2d 236, 239 (S.D.N.Y. 2000) (internal citations and quotations omitted). The doctrine of the law

of the case also constrains the Court's discretion in this regard. See <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983); <u>see also</u> <u>DiLaura v. Power Auth. of State of N.Y.</u>, 982 F.2d 73, 76 (2d Cir. 1992) ("The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting <u>In re PCH Assocs.</u>, 949 F.2d 585, 592 (2d Cir. 1991)).

With these principles in mind, this Court declines to revisit Judge Irizarry's prior ruling that this is not an exceptional case warranting an award of attorneys' fees. See 3/25/08 Opinion at 32-33. Not only was this issue previously ruled upon, but plaintiff's request for a premotion conference, seeking leave to submit a second motion for summary judgment, was silent as to the "exceptional case" issue. See 7/9/08 Pl. Letter (stating that the renewed motion would be based on newly discovered evidence that "defendants Michael Aini, Jacob Aini, and/or Choul were involved in the use of Plaintiff's marks in commerce. "). Accordingly, plaintiff was not granted leave to reargue this issue. Judge Irizarry has expressly ruled in this case that "[a]ny motion filed without the permission of the court . . . will be summarily stricken." Order (Jan. 29, 2009). Consistent with that ruling, plaintiff's unauthorized motion to reargue the exceptional case issue should be summarily denied.

**V. Sanctions**

Plaintiff's motion for sanctions under Rules 37(a), 37(c), and 56(g) of the Federal Rules of Civil Procedure is likewise procedurally defective. Once again, plaintiff contends that defendants submitted false and misleading affidavits and testimony. See Pl. Mem. at 24-25. As an initial matter, here too, plaintiff failed to seek leave to address the issue of sanctions in

its renewed motion for summary judgment.  See 7/9/08 Pl. Letter.  Since the Court retains

discretion to determine the scope of its reconsideration, this is a sufficient basis on which to

decline to consider the issue at this time.  See Caribbean Wholesales, 101 F.Supp.2d at 239;

*supra* pages 9, 22-23.

Additionally, pursuant to Rule 56(g), sanctions are appropriate only if an affidavit made

in bad faith determined the outcome of the summary judgment ruling.  See Jaisan, Inc. v.

Sullivan, 178 F.R.D. 412, 415-16 (S.D.N.Y. 1998) (surveying cases in which courts awarded

Rule 56(g) sanctions "where affidavits contained perjurious or blatantly false allegations or

omitted facts concerning issues central to the resolution of the case," and those that denied

awards of sanctions "where a litigant's actions, even though wrongful, did not affect the

disposition of the summary judgment motion"); Faberge, Inc. v. Saxony Prods., Inc., 605

F.2d 426, 429 (9th Cir. 1979) (holding that Rule 56(g) sanctions were not warranted, even if

affidavit was submitted in bad faith, because the outcome of the summary judgment motion did

not turn on the affidavit).  Assuming that the District Court agrees that the outcome of this

second motion for summary judgment should be no different than the first, it cannot be said

that any false affidavits from defendants determined the outcome of either motion.[15]

## CONCLUSION

For all of the foregoing reasons, this Court respectfully recommends that summary

judgment against ICE, M. Aini, J. Aini and Choul be denied, and that the District Court

---

[15]  Of course, Judge Irizarry retains the right to impose sanctions under Rule 11 in the event
she concludes that such are warranted.  See generally Order (Jan. 29, 2009).

decline to reconsider whether this is an exceptional case, or to consider imposition of sanctions at this time.

Any objections to the recommendations contained in this Report and Recommendation must be filed with Judge Irizarry on or before December 15, 2009. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a)(1), 72(b)(2); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to enter this Report and Recommendation into the ECF system.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**December 1, 2009**

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**